**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

TIMOTHY HOWARD, BRUNEL JEAN PIERRE,
and BRANDEN BROOKS, on behalf of themselves
and all others similarly situated,

                                **Plaintiffs,**

                  -against-

HOME DEPOT U.S.A., INC. d/b/a
HOME DEPOT,

                          **Defendant.**
-------------------------------------------------------------------x

Case No.: 18-CV-04549

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs TIMOTHY HOWARD ("Howard"), BRUNEL JEAN PIERRE ("Jean Pierre"), and BRANDEN BROOKS ("Brooks"), (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action for damages and other legal and equitable relief against the Defendant HOME DEPOT U.S.A., INC. d/b/a HOME DEPOT ("Defendant"), upon personal knowledge as to themselves and upon information and belief as to others, for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York State Labor Law ("NYLL"), the New York Code of Rules and Regulations ("NYCRR"), The New York Wage Theft Prevention Act, and any other causes of action that can be inferred from the facts set forth herein:

## INTRODUCTION

1.     This is an action brought by Plaintiffs challenging acts committed by Defendant against Plaintiffs amounting to collective and class claims of violations of Federal and State wage and hour laws.

2.     Plaintiffs bring this action on their own behalf and also on behalf of those similarly situated pursuant to Federal and State laws requiring overtime pay and pay for all hours worked.

3.     Defendants committed violations of these laws by engaging in a systematic scheme of failing to compensate Plaintiffs and those similarly situated the full amount of their statutorily-required wages.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute 28 U.S.C. 2201; (iii) under 29 U.S.C. § 201 et seq.

5.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

6.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

7.     The amount in controversy is within the jurisdictional limits of this Court.

8.     This Court has jurisdiction over all claims in this action.

9.     All conditions precedent to filing this cause of action have been met.

## PARTIES

10.     Howard is a citizen of New York State and resides in Brooklyn, New York.

11.     Jean Pierre is a citizen of New York State and resides in Brooklyn, New York.

12.     Brooks is a citizen of New York State and resides in Brooklyn, New York.

13.     Upon information and belief, Defendant is a corporation organized pursuant to the laws of the State of Delaware with its principal place of business located at 2455 Paces Ferry Road, Atlanta, GA and has various places of business throughout the State of New York.

14.     Defendant has locations across the United States and across the State of New York, including the location at 5700 Avenue U, Brooklyn, NY 11234 ("Kings Plaza Location").

15.     Upon information and belief, Defendant has a qualifying annual volume of business in excess of $500,000, thereby subjecting Defendant to the FLSA's overtime requirements. Additionally, Defendant's employees are engaged in interstate commerce as they all handle goods that have been moved in interstate commerce, which independently subjects Defendant to the overtime requirements of the FLSA.

16.     Plaintiffs were throughout their entire employment with Defendant, covered, non-exempt employees within the meaning of the NYLL and the FLSA. As such, Plaintiffs were, and are, entitled to be paid in full for all hours worked.

17.     Defendant employed Plaintiffs as hourly employees, in Plaintiff's King's Plaza Location, and maintained control, oversight, and direction over Plaintiffs in regard to timekeeping, payroll, and other employment practices, and functioned as an employer pursuant to the NYLL.

18.     Defendant is considered a large employer, having at least 11 or more employees during the duration of Plaintiffs' employment.

19.     Defendant, by virtue of its ownership, management, and control over the wages and work of Plaintiffs, is considered an employer under the NYLL §190(3).

## COLLECTIVE ACTION ALLEGATIONS

20.     Plaintiffs seeks to bring this suit pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following class:

> Current and former employees of Defendant who performed any work at Defendant's Kings Plaza Location as non-exempt employees who give consent to file a cause of action to (1) recover overtime compensation which is legally due them for the time worked in excess of 40 hours in a given work week; to recover the difference between the amount of wages actually paid to them and the amount which they were entitled to pursuant to the overtime requirements of the FLSA; (2) recover straight or minimum wage which is legally due them for the time worked for which they were not compensated; and (3) to recover damages for Defendant not providing them with accurate statements with every payment of wages ("FLSA Plaintiffs").

21.     Plaintiffs are similarly situated to all FLSA Plaintiffs because while employed by Defendant, Plaintiffs and FLSA Plaintiffs: performed similar tasks; were subject to the same laws and regulations; were paid in the same or similar manner; were paid the same or similar rate; were not paid an amount equal to the applicable Federal and State minimum wage requirements; were not compensated at the required overtime rate of pay for hours worked in excess of 40 in a given week; and were not provided with accurate statements with every payment of wages.

22.     Defendant treated all FLSA Plaintiffs similarly in requiring them to work in excess of 40 hours per workweek without overtime compensation. Plaintiffs and FLSA Plaintiffs work and/or worked for Defendants beyond 40 hours per workweek, and, yet Defendants did not pay them the statutorily required overtime compensation. This practice was enforced against all employees in similar or identical fashion.

23.     Defendant further treated Plaintiffs and FLSA Plaintiffs similarly in requiring them to work without compensation prior to clocking in. Defendant did not pay Plaintiffs and FLSA Plaintiffs at the agreed-upon or minimum wage for time spent working prior to clocking in.

24.     Defendant additionally treated Plaintiffs and FLSA Plaintiffs similarly in failing to provide them with accurate statements with every payment of wages, listing, *inter alia*, the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage, net wages, regular hourly rate or rates of pay;  the overtime rate or rates of pay;  the number of regular hours worked, and the number of overtime hours worked.

25.     Defendant is and has been aware of the requirement to pay Plaintiffs and FLSA Plaintiffs in accordance with minimum wage, overtime, and all other applicable labor laws, yet purposefully chose not to.

26.     All of the work that Plaintiffs and FLSA Plaintiffs performed had been assigned by Defendant, and Defendant has been aware of all of the work that Plaintiffs and FLSA Plaintiffs performed.

## RULE 23 CLASS ALLEGATIONS

27.     Plaintiffs additionally seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on their own behalf as well as those who are similarly situated and are also FLSA Plaintiffs, who, at any time during the period commencing six years prior to the filing of this action and continuing until such further date as the practices complained of are discontinued (the "Class Period") and were subjected to violations of the FLSA and NYLL.

28.     The Class which Plaintiff seeks to define includes:

> All current and former associates and non-exempt employees who worked for Defendant in the State of New York at Defendant's Kings Plaza Location during the Class Period who (a) were not compensated at the straight or minimum wage for all hours worked; (b) were not compensated at the statutory overtime rate of one-and-one-half their hourly rate of pay for all hours worked in excess of 40

per week; (c) were not provided an accurate statement with every payment of wages ("Class Plaintiffs").

29. Each of the enumerated and defined characteristics labeled as (a) through (c) sufficiently and independently describe a class, giving rise to potentially three classes of plaintiffs intended to be covered by this suit. Hereinafter, the classes will be referred to in the singular as "Class," and members of each class as "Class Plaintiffs," collectively

30. Upon information and belief, during the previous six years, Defendant has, in total, in excess of 250 employees at the Kings Plaza Location. The Class Plaintiffs are so numerous that joinder of all members in one proceeding is impracticable.

31. There are common questions and law/fact that govern over the claims which are available to each and every Class Plaintiff, including but not limited to the following:

a. Whether Class Plaintiffs were compensated for overtime pay pursuant to Defendants' policies;

b. Whether Class Plaintiffs were required by Defendant to perform work for Defendant's benefit without pay;

c. Whether Class Plaintiffs were compensated at a rate less than the statutorily required minimum hourly rate of pay;

d. Whether Defendant kept accurate records of hours worked by Class Plaintiffs;

e. Whether Defendant required employees to clock-in after they had begun work;

f. Whether Defendant required employees to wait, on Defendant's premises prior to clocking-in;

g. Whether Class Plaintiffs were provided accurate wage statements; and

h. Whether Defendant has any affirmative defenses for any of these claims.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33.     The number, names and addresses of all Class Plaintiffs are readily ascertainable from the records of the Defendant. The dates of employment and the rates of pay for each Class Plaintiff, the hours assigned and worked, and the wages paid to them, are also easily determinable from Defendant's records.

34.     Plaintiffs were employed by Defendant in substantially the same capacity as all of Defendant's employees aside from management or other exempt employees. All of Defendant's employees were treated the same or similarly by management with respect to pay or lack thereof. Thus, there are common questions of law and fact which are applicable to each and every one of Defendant's employees.

35.     This treatment included, but was not limited to, failure to pay employees the proper overtime wages and failure to compensate employees in accordance with the statutorily prescribed minimum rate of pay.

36.     Defendant has acted or has refused to act on grounds generally applicable to all Class Plaintiffs, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

37.     The claims of Plaintiff are typical to the claims of the Class because they are all current or former associates or otherwise non-exempt employees of Defendant who sustained damages, including underpayment of wages as a result of Defendant's common compensation policies and practices. The defenses that Defendant is likely to assert against the Plaintiff's claims are typical of the defenses that Defendant is likely to assert against the Class.

38.     Any lawsuit brought by an employee of Defendant would be identical to a suit brought by any other employee for the same violations and separate litigation would cause a risk of inconsistent results. Plaintiffs have no facts relating to the class claim that are atypical from those of the class. Upon information and belief, Plaintiffs were treated identical to other employees.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiff and the Class members lack the financial resources to adequately prosecute separate lawsuits against Defendant. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendant's policies.

40.     There is no conflict between Plaintiffs or any Class Plaintiff.

41.     Important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

42.     Because Plaintiffs are no longer employed by Defendants, they will be able to further represent Class Plaintiffs by acting without fear of retaliation and harassment. Thus, this means protecting all of Class Plaintiffs' rights is superior to any other method.

43.     Plaintiff and their counsel will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel experienced in complex wage and hour class action litigation.

44.     Plaintiffs intend to send notice to all Class Plaintiffs to the extent required by law.

**FACTS APPLICABLE TO PLAINTIFF TIMOTHY HOWARD**

45.     All of the alleged violations by Defendant of the NYLL and supporting New York State Department of Labor Regulations were knowing or intentional.

46.     Howard's duties were to perform labor in furtherance of Defendant's business.

47.     Howard had no authority to hire employees, fire employees, suspend employees, discipline employees, and/or discretion or independent judgment regarding matters of significance.

48.     Howard was employed by Defendant as an associate in various departments from approximately May 2, 2007 through July 26, 2017.

49.     Howard's duties as an associate included maintaining the department, cleaning, stocking, inventory, and assisting customers. These duties were performed for the benefit of Defendant.

50.     Howard's agreed upon wages for the period of his employment was $9.50 per hour upon hire and incrementally increased to $14.50 per hour.

51.     All of the work performed by Howard was compensable and performed for the benefit of Defendant.

52.     During the last year of Howard's employment, he worked shifts scheduled from 1:00 p.m. to 10:00 p.m., Monday through Friday. Howard was provided a 1-hour unpaid meal break each shift. Accordingly, Howard was scheduled to work 40-hours per week.

53.     In reality, Howard worked between 45-50 hours each week, and occasionally as many as 60 hours.

54.     Throughout the duration of Howard's employment, Defendant utilized the Kronos timekeeping system to track hours worked by employees.

55.     Howard would clock in and out every shift using Defendant's timekeeping system.

56.     Howard was required to, and routinely did perform work on behalf of Plaintiff prior to clocking in at the start of his shift.

57.     Howard would work later than 10:00 p.m., sometimes as late as 3:00 a.m. depending on the needs of Defendant. During this time between 10:00 p.m. and 3:00 a.m. Howard would

perform "down-stocking" which included inventory, counting, cleaning, stocking and re-stocking and general manual labor. All of this work was compensable and done for the benefit of Defendant.

58.    When Howard worked past 10:00 p.m., Defendant required him to clock-in an equal amount of time later on a subsequent day, despite Howard actually beginning work at 1:00 p.m. each shift.

59.    Howard would arrive at work, ready and able to work, and would be informed by management that he was not to clock in until later in the day.

60.    Prior to being permitted to clock-in, Howard would cover shifts of other employees in various departments, handle customer service, assist other workers, and load trucks, among other tasks. This work was compensable and done for the benefit of Defendant. When Howard was not required to perform work for the benefit of the Defendant, he was required to wait on-site until he was permitted to sign in.

61.    Thus, Howard's time sheets reflected less work than was actually performed by Howard and Howard was not paid for all hours worked.

62.    Upon information and belief, Defendant did enforce this policy so as to avoid paying Howard straight and overtime wages to which he was entitled.

63.    Thus, because of Defendant's improper compensation policies, Howard was not paid for between 5 and 10 hours per pay period in direct violation of the NYLL and FLSA.

64.    This practice occurred throughout Howard's employment with Defendant but was much more common in the last 4 years of his employment.

65.    While this procedure occurred on a weekly basis, Howard was underpaid the most during Defendant's busiest periods which included the weeks of Black Friday, Halloween, July 4th, Christmas, Labor Day, and Memorial Day, and, during Defendant's yearly inventory, which began

during the last week of January each year and continued into the second week of February. During these weeks Howard would work shifts up to 14 hours in length, totaling 55 to 60 hours per week, without being paid for all hours worked.

66. Howard's work responsibilities during the yearly inventory included, in addition to his normal associate duties; counting, moving, manual labor, restocking, and operating machines. All this work was compensable and performed for the benefit of Defendant.

67. For instance, during the pay week of November 21-27, 2016, Howard did work approximately 55 hours for Defendant. All of the work was compensable and performed for Defendant's benefit. However, Howard was only paid for approximately 42 hours during this pay period. Accordingly, Howard was not paid at the straight or overtime rate for approximately 13 hours during this pay period.

68. While Howard received wage statements accompanying his paychecks, these wage statements did not accurately reflect all hours worked.

69. A good faith basis for believing that the underpayment of wages for Howard was in compliance with applicable wage laws does not exist.

70. By Defendant's knowing and/or intentional failure to pay Howard his full wages, Defendant has willfully violated the New York Labor Law and the supporting New York State Department of Labor Regulations as well as the FLSA.

71. Defendant is aware or should have been aware that Federal and New York State law required Defendant to pay Howard wages for all time worked.

72. Defendant's unlawful conduct has been widespread, repeated, and consistent.

## FACTS APPLICABLE TO PLAINTIFF BRUNEL JEAN PIERRE

73.     All of the alleged violations by Defendant of the NYLL and supporting New York State Department of Labor Regulations were knowing or intentional.

74.     Jean Pierre's duties were to perform labor in furtherance of Defendant's business.

75.     Jean Pierre had no authority to hire employees, fire employees, suspend employees, discipline employees, and/or discretion or independent judgment regarding matters of significance

76.     Jean Pierre was employed by Defendant in various positions from approximately February 22, 2014 through August 15, 2017. During his employment, Jean Pierre worked as an associate in the garden department, as a millworker in the doors department, and as a forklift operator.

77.     Jean Pierre's agreed upon wages for the period of his employment was $10.75 per hour at the start of his employment. His rate of pay increased incrementally to $12.65 for the last 9 months of his employment.

78.     Jean Pierre's duties included maintaining the department, cleaning, stocking, inventory, assisting customers, stocking and re-stocking and operating machinery including forklifts. These duties were performed for the benefit of Defendant.

79.     All of the work performed by Jean Pierre was compensable and performed for the benefit of Defendant.

80.     While Jean Pierre worked as an associate in the garden department and in the door department his schedule was Monday, Tuesday, Thursday and Friday from 1:00 p.m. to 10:00 p.m. and Sundays from 12:00 noon until 9:00 p.m. Jean Pierre was provided a 1-hour unpaid meal break each shift. Accordingly, he was scheduled to work 40 hours per week.

81.     While Jean Pierre worked as a forklift operator his schedule was Monday, Tuesday, Thursday, Friday and Sunday from 9:00 p.m. to 6:00 a.m. Jean Pierre was provided a 1-hour unpaid meal break each shift. Accordingly, he was scheduled to work 40-hours per week.

82.     In reality, Jean Pierre worked between 45-50 hours each week.

83.     Throughout the duration of Jean Pierre's employment, Defendant utilized the Kronos timekeeping system to track hours worked by employees.

84.     Jean Pierre would clock in and out every shift using Defendant's timekeeping system.

85.     Jean Pierre was required to, and routinely did perform work on behalf of Plaintiff prior to clocking in at the start of his shift.

86.     As an associate Jean Pierre would work later than 10:00 p.m., sometimes as late as 3:00 a.m., depending on the needs of Defendant. During this time between 10:00 p.m. and 3:00 a.m. Howard would perform inventory, counting, cleaning, stocking and re-stocking and general manual labor. All of this work was compensable and done for the benefit of Defendant.

87.     As a forklift operator Jean Pierre would work later than 6:00 a.m., sometimes as late as 10:00 a.m., depending on the needs of Defendant. During this time between 6:00 a.m. and 10:00 a.m. Jean Pierre would perform inventory, stocking and re-stocking and general manual labor. All of this work was compensable and done for the benefit of Defendant

88.     When Jean Pierre worked past 10:00 p.m. or 6:00 a.m., Defendant required him to clock-in an equal amount of time later on a subsequent day, despite Jean Pierre actually showing up for his shift at the scheduled time, ready, willing, and able to work upon arriving for his shift.

89.     Jean Pierre would arrive at work, ready, willing, and able to work, and would be informed by management that he was not to clock in until later in the day. Jean Pierre would be

required to wait on Defendant's premises until a manager informed him that he was permitted to clock in and begin work.

90. This time spent waiting on Defendant's premises without being permitted to clock-in was compensable time that Jean Pierre was never paid for.

91. Thus, Jean Pierre's time sheets showed less work than was actually performed and Jean Pierre was not paid for all hours worked.

92. Upon information and belief, Defendant did enforce this policy so as to avoid paying Jean Pierre straight and overtime wages to which he was entitled.

93. Thus, because of Defendant's improper compensation policies, Jean Pierre was not paid for between 5 and 10 hours per pay period, in direct violation of the NYLL and FLSA.

94. This procedure occurred throughout Jean Pierre's employment with Defendant.

95. While this procedure occurred on a weekly basis, Jean Pierre was underpaid the most during Defendant's busiest periods which included the weeks of Black Friday, Halloween, July 4th, Christmas, Labor Day, and Memorial Day, and, during Defendant's yearly inventory, which began during the last week of January each year and continued into the second week of February. During these weeks Jean Pierre would work shifts up to 14 hours in length, totaling 55 to 60 hours per week, without being paid for all hours worked.

96. Jean Pierre's work responsibilities during the yearly inventory included, in addition to his normal duties; counting, moving, manual labor, restocking, and operating machines. All this work was compensable and performed for the benefit of Defendant.

97. For instance, during the pay week of November 21-27, 2016, Jean Pierre did work approximately 49 hours for Defendant. All of the work was compensable and performed for Defendant's benefit. However, Jean Pierre was only paid for approximately 42 hours during this

pay period. Accordingly, Jean Pierre was not paid at the straight or overtime rate for approximately 7 hours during this pay period.

98. While Jean Pierre received wage statements accompanying his paychecks, these wage statements did not accurately reflect all hours worked.

99. A good faith basis for believing that the underpayment of wages for Jean Pierre was in compliance with applicable wage laws does not exist.

100. By Defendant's knowing and/or intentional failure to pay Jean Pierre his full wages, Defendant has willfully violated the New York Labor Law and the supporting New York State Department of Labor Regulations as well as the FLSA.

101. Defendant is aware or should have been aware that Federal and New York State law required Defendant to pay Jean Pierre wages for all time worked.

102. Defendant's unlawful conduct has been widespread, repeated, and consistent.

## FACTS APPLICABLE TO PLAINTIFF BROOKS

103. All of the alleged violations by Defendant of the NYLL and supporting New York State Department of Labor Regulations were knowing or intentional.

104. Brooks' duties were to perform labor in furtherance of Defendant's business.

105. Brooks was employed by Defendant in various positions from approximately June 12, 2014 through February 17, 2017. During his employment, Brooks worked as an associate in various departments including plumbing and flooring department. During the last 10-11 months he worked as a department head in painting and plumbing.

106. Brooks' agreed upon wages for the period of his employment was $11.00 per hour at the start of his employment and increased incrementally to $16.35 at the end of his employment.

107.     Brooks' duties as an associate included maintaining the department, cleaning, stocking, inventory, and assisting customers. These duties were performed for the benefit of Defendant.

108.     Brooks' duties as a department head included interviewing, managing associates, hiring and firing, and receiving, in addition to the duties he performed as an associate. These duties were performed for the benefit of Defendant.

109.     All of the work performed by Brooks was compensable and performed for the benefit of Defendant.

110.     While Brooks worked as an associate his schedule was 5 days per week from 1:00 p.m. to 10:00 p.m. Brooks was provided a 1-hour unpaid meal break each shift. Accordingly, as an associate he was scheduled to work 40-hours per week.

111.     While Brooks worked as a department head his schedule varied but was always five nine-hour shifts per week. Brooks was provided a 1-hour unpaid meal break each shift. Accordingly, as a department head, he was scheduled to work 40-hours per week.

112.     In reality, Brooks worked between 45-50 hours each week.

113.     Throughout the duration of Brooks' employment, Defendant utilized the Kronos timekeeping system to track hours worked by employees.

114.     Brooks would clock in and out every shift using Defendant's timekeeping system.

115.     Brooks was required to, and routinely did perform work on behalf of Plaintiff prior to clocking in at the start of his shift.

116.     Brooks would work later than 10:00 p.m., sometimes as late as 3:00 a.m. depending on the needs of Defendant.

117.     When Brooks worked past 10:00 p.m., Defendant required him to clock-in an equal amount of time later on the subsequent day, despite Brooks actually beginning work at 1:00 p.m.

118.     Brooks would arrive at work, ready and able to work, and would be informed by management that he was not to clock in until later in the day.

119.     Prior to being permitted to clock-in, Brooks would cover shifts of other employees in various departments while they took their 1-hour break.

120.     Thus, Brooks' time sheets showed less work than was actually performed and Brooks was not paid for all hours worked.

121.     Upon information and belief, Defendant did enforce this policy so as to avoid paying Brooks straight and overtime wages to which he was entitled.

122.     Thus, because of Defendant's improper compensation policies, Brooks was not paid for between 5 and 10 hours per pay period, in direct violation of the NYLL and FLSA.

123.     This procedure occurred throughout Brooks' employment with Defendant.

124.     While this procedure occurred on a weekly basis, Brooks was underpaid the most during Defendant's busiest periods which included the weeks of Black Friday, Halloween, July 4th, Christmas, Labor Day, and Memorial Day, and, during Defendant's yearly inventory, which began during the last week of January each year and continued into the second week of February. During these weeks Brooks would work shifts up to 14 hours in length, totaling 55 to 60 hours per week, without being paid for all hours worked.

125.     Brooks' work responsibilities during the yearly inventory incuded, in addition to his normal associate or department head duties; counting, moving, manual labor, restocking, and operating machines. All this work was compensable and performed for the benefit of Defendant.

126.     For instance, during the pay week of November 21-27, 2016, Brooks did work approximately 50 hours for Defendant. All of the work was compensable and performed for Defendant's benefit. However, Howard was only paid for approximately 45 hours during this pay period. Accordingly, Howard was not paid at the straight or overtime rate for approximately 5 hours during this pay period

127.     While Brooks received wage statements accompanying his paychecks, these wage statements did not accurately reflect all hours worked.

128.     A good faith basis for believing that the underpayment of wages for Brooks was in compliance with applicable wage laws does not exist.

129.     By Defendant's knowing and/or intentional failure to pay Brooks his full wages, Defendant has willfully violated the New York Labor Law and the supporting New York State Department of Labor Regulations as well as the FLSA.

130.     Defendant is aware or should have been aware that Federal and New York State law required Defendant to pay Brooks wages for all time worked.

131.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

**<u>FACTS APPLICABLE TO ALL PLAINTIFFS</u>**

132.     Upon information and belief, Class Plaintiffs perform the same and/or similar work to that of the Names Plaintiffs.

133.     Like the Named Plaintiffs, the Class Plaintiffs routinely were not paid for every hour that they worked.

134.     Like the Named Plaintiffs, the Class Plaintiffs generally were not paid overtime wages, at the applicable overtime hourly rate, for all hours worked in excess of 40 hours in any given week.

135.    Like the Named Plaintiffs, the Class Plaintiffs did not receive accurate wage statements each pay period.

**AS AND FOR A FIRST CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFFS AND THE CLASS**
**For Violation of the New York Labor Law**

136.    Plaintiffs allege and re-allege all of the other paragraphs contained herein.

137.    The wage provisions of the NYLL and its supporting regulations apply to Defendant and protect Plaintiffs and the Class.

138.    Pursuant to the NYLL § 190 *et seq.* including, but not limited to §§190, 191, 193, 198, 650, and 652, and 12 NYCRR § 142.2.1, the Defendant has willfully failed to pay the minimum wage as set forth in the preceding paragraphs of this Complaint to Plaintiffs and the Class.

139.    By Defendant's knowing and/or intentional failure to pay Plaintiffs and the Class the minimum wage, Defendant has knowingly violated the NYLL and other supporting New York Department of Labor Regulations.

140.    Due to Defendant's violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendant the difference between the amount they were actually paid, and the amount that they should have been paid had Defendant paid them the minimum wage. In addition, Plaintiffs and the Class are entitled to recover liquidated damages equal to 100% of their actual damages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

**AS AND FOR A SECOND CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFFS AND THE CLASS**
**For Nonpayment of Overtime in Violation of NYLL**

141.    Plaintiffs allege and re-allege all of the other paragraphs contained herein.

142.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations, and 12 NYCRR 142-3.2 apply to Defendant to protect Plaintiffs and Class Plaintiffs.

143. Defendant failed to pay Plaintiffs and Class Plaintiffs overtime wages to which they are entitled under the NYLL and supporting regulations.

144. By Defendant's knowing and/or intentional failure to pay Plaintiffs and Class Plaintiffs overtime wages for hours worked in excess of 40 in a week, Defendant has willfully violated NYLL § 190 *et seq*. including, but not limited to §§190, 191, 193, 198 and 650 and the supporting regulations.

145. Due to these violations, Plaintiffs and Class Plaintiffs are entitled to recover from Defendant their unpaid overtime wages, liquidated damages equal to 100% of the unpaid overtime wages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AND THE CLASS
### For Violation of the New York Labor Law

146. Plaintiffs alleges and re-alleges all of the other paragraphs contained herein.

147. Defendant willfully failed to supply Plaintiffs and Class Plaintiffs, as required by NYLL, Article 6 § 195(3) with an accurate statement with every payment of wages, listing *inter alia*, gross wages, deductions, and net wages.

148. Defendant through its knowing or intentional failure to provide Plaintiffs and Class Plaintiffs with accurate wage statements willfully violated the NYLL.

149. Due to Defendant's willful violation of the NYLL, Plaintiffs and Class Plaintiffs are entitled to statutory penalties of $250 for each day that Defendant failed to provide Plaintiffs and Class Plaintiffs with an accurate wage statement, to a maximum of $5,000 for each of Plaintiffs and each Class Plaintiff.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class Plaintiffs, demands judgment against Defendant as follows:

1. Issue notice to all similarly situated employees of their right to file consents to join this FLSA collective action;

2. Certification of the Class as described herein under FRCP 23 and appointing Plaintiffs as representative of the Class and Plaintiffs' counsel as lead counsel for the Class;

3. A jury trial on these issues to determine liability and damages;

4. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

5. A judgment declaring that the practices complained herein are unlawful and in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*., New York Labor Law § 215; the New York Labor Law §§ 650 et seq.; the New York Wage Theft Prevention Act; and any other applicable state or federal statute or regulation;

6. All damages which Plaintiffs and Class Plaintiffs have sustained as a result of Defendant's conduct, including;

    a. Base damages equal to 100% of wages owed;

    b. Liquidated damages equal to 100% of wages owed; and

    c. An award of statutory penalties for each workday that Defendants failed to provide Plaintiff with an accurate wage statement, or a total of $5,000;

7. Awarding Plaintiffs and Class Plaintiffs their costs and disbursements incurred in connection with this action including reasonable attorneys' fees, and other costs;

8.     Pre-judgment and post-judgment interest, as provided by law; and

9.     Granting such other and further relief as this Court deems necessary and proper.

Dated: Jericho, New York
       July 23, 2018

                                        /s/ JAMES BOUKLAS
                                        James Bouklas, Esq.
                                        Bouklas Gaylord LLP
                                        *Attorneys for Plaintiffs*
                                        400 Jericho Turnpike Suite 226
                                        Jericho, NY 11753
                                        Phone: (516) 742-4949
                                        Fax:    (516) 742-1977